IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

JAMES BROWN,

                       Petitioner,                  Civil Action No.
                                             9:07-CV-1139 (NAM/DEP)

           v.

JAMES CONWAY, Superintendent, Attica
Correctional Facility,

                       Respondent.

─────────────────────────────────────

APPEARANCES:

FOR PETITIONER:

JAMES BROWN, *Pro Se*
03-B-2603
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR RESPONDENT:

HON. ANDREW M. CUOMO           ALYSON J. GILL, ESQ.
Office of the Attorney General      LEILANI RODRIGUEZ, ESQ.
State of New York                    Assistant Attorneys General
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Petitioner James Brown, a New York State prison inmate as a result of a 2003 conviction for rape, sodomy, assault, robbery and kidnapping, has commenced this proceeding pursuant to 28 U.S.C. § 2254 claiming that his conviction was the product of various constitutional violations.  In his petition Brown sets forth eight separate grounds for requesting habeas relief, challenging certain evidentiary rulings of the trial court, the sufficiency of evidence against him, the effectiveness of his counsel, and the propriety of the sentence imposed by the trial court.

In his answer to Brown's petition, the respondent has both challenged its timeliness and argued that none of the grounds cited provides a basis for granting habeas relief.  Because it is clear that Brown's habeas petition is untimely, and he has offered no basis to excuse his late filing, I recommend that the petition be dismissed on this procedural ground, and therefore have not addressed the merits of his habeas claims.

I.    BACKGROUND

This proceeding arises out of the abduction and brutal physical and sexual assault of a fifteen year old girl during the early morning hours on

August 30, 2002.[1]  The events leading up to the assault and petitioner's
conviction were set in motion when H.W. left her home through a bedroom
window, apparently without her parents' knowledge or permission, intending
to rendezvous with friends.  Trial Transcript ("TT") 1564-65.  The victim was
unable to locate her friends, but encountered the petitioner at a nearby gas
station and asked him to buy her cigarettes.  TT 1565-67.  After purchasing
the cigarettes and giving them to her, Brown drove away, and H.W. left the
gas station on foot.  TT 1567.  Brown subsequently pulled his vehicle into
another gas station, where H.W. was walking, and approached her; after
getting out of his vehicle, he placed her in a headlock, punched her several
times in the face, and forced her into his car.  TT 1567-69.

   With the victim buckled in the front passenger seat and covered by a
blanket, Brown drove for a significant period of time.  TT 1569-70.  Brown
ultimately stopped the vehicle on a dirt road and forced H.W. to undress and
engage in oral, vaginal, and anal sex.  TT 1571-76.  After taking money from

---

[1]      Under New York law, "[t]he identity of any victim of a sex offense . . . shall be
confidential.  No . . . court file or other documents, in the custody or possession of any
public officer or employee, which identifies such a victim shall be made available for public
inspection."  N.Y. Civ. Rights Law § 50-b(1).  In light of this provision and in order to insure
her privacy, the victim in this case will be referred to herein as "H.W.".  *See Lucidore v. N.
Y. Div. of Parole,* 209 F.3d 107, 109 n.4 (2d Cir.), *cert. denied,* 531 U.S. 873,  121 S.Ct.
175 (2000).

the victim's purse, tying her wrists behind her back, and driving to another location, Brown burned the victim's right eye with a hot cigarette lighter, repeatedly stabbed her in and about the eyes with a knife, and then asked her whether she could see him.  TT 1577-83.  When the victim responded that she could not, Brown forced her out of the car, naked, and drove away. TT 1583-84.

Wearing no clothes and bleeding profusely, H.W. ran to a nearby highway where she was able to convince a truck driver to stop, assist her, and contact law enforcement authorities.  TT 1584-87.  The victim was thereafter taken by ambulance to a nearby hospital emergency room, where she was treated for wounds, which included nasal and sinus fractures caused by blunt trauma. TT 1587-88, 1175-78.  H.W. later underwent plastic surgery on her right eye, though she now suffers from permanent disfiguration and scarring.  TT 1589-91.

After a bulletin was circulated by law enforcement officials describing his vehicle, Brown was encountered during the early morning hours on August 30, 2002 by two New York State Troopers at a roadside "pull off". Based upon the results of a field sobriety test and the discovery of a crack pipe containing drug residue in his vehicle, Brown was placed under arrest

4

and transported to a local state police station. TT 1903.  During an ensuing

interview petitioner acknowledged having an encounter with H.W., but offered

a significantly different version of the relevant events, claiming that the two

had consensual anal intercourse at a rest stop and that the victim was

interested in obtaining drugs from the petitioner.  TT 1889-92.   According to

Brown, at one point the victim reached for his knife, and an altercation

ensued.  TT 1896-97.  Petitioner maintained that H.W. threatened to scream

that he had raped her, so he cut her several times with a knife and pushed a

hot cigarette lighter into her.  TT 1897-98.  Petitioner acknowledged forcing

the victim out of his car, but denied taking any money from her.  TT 1898-99.

II.    PROCEDURAL HISTORY

A.    State Court Proceedings

Petitioner was indicted by an Otsego County grand jury on October 25,

2002 and charged with the crimes of first degree rape, two counts of first

degree sodomy, three counts of first degree assault, two counts of first

degree robbery, and kidnapping in the second degree, all stemming from the

incident involving H.W.  State Court Records Exh. B. (Respondent's

Appellate Brief) at p. 1.  Beginning on August 2, 2005, a jury trial was

conducted before County Court Judge Michael Coccoma in connection with

5

the charges lodged by indictment against the petitioner in Otsego County

Court.[2]   At the close of that trial the jury returned a verdict finding petitioner

guilty on each of the counts charged.  TT 2385-86.  Petitioner was

subsequently sentenced on October 27, 2003 to a series of consecutive and

concurrent sentences which, when taken in the aggregate, resulted in a

determinate sentence of confinement for a period of one hundred years.[3]

Sentencing Transcript ("ST") at 23-28.

Petitioner appealed his conviction to the New York State Supreme

Court Appellate Division, Third Judicial Department.  State Court Records

Exh. A (Petitioner's Appellate Brief).  In that appeal petitioner advanced

several grounds for reversal, arguing that 1) the trial court erred in refusing to

grant petitioner's motion to suppress physical evidence seized from him as

well as his statements to law enforcement agents; 2) the trial court improperly

denied his requests for the production of the victim's school and counseling

---

[2]     Prior to the trial Judge Coccoma conducted a four-day evidentiary hearing addressing various suppression motions brought by the petitioner.  Following the close of that hearing Judge Coccoma issued a written decision in which he apparently denied all or the vast majority of defendant's motions.  Judge Coccoma's written decision was not among the state court records provided to the court in this case.  As will be seen, however, this omission is not critical to my recommendation.

[3]     "Although the aggregate sentence for the nine crimes totaled 100 years, that sentence is statutorily reduced to 50 years."  *People v. Brown*, 24 A.D.3d 888 n.* (citing N.Y. Penal Law § 70.30(1)(e)(vi)).

records and efforts to elicit testimony from the victim's former boyfriend; 3)

the verdict was against the weight of the evidence; 4) the trial court

improperly failed to preclude the prosecution from asking the petitioner to

explain the discrepancies between his testimony and that of prosecution

witnesses; 5) he was denied effective assistance of counsel; and 6) his

sentence was unduly harsh and excessive. *Id.* The Third Department

affirmed the petitioner's conviction by decision issued on December 8, 2005,

rejecting each of the grounds raised in support of petitioner's appeal. *People*

*v. Brown*, 24 A.D.3d 884, 806 N.Y.S.2d 262 (3d Dep't 2005). Leave to

appeal to the New York Court of Appeals was subsequently denied on March

15, 2006.[4] *People v. Brown*, 6 N.Y.3d 832, 814 N.Y.S.2d 80 (2006) (Table).

It appears that petitioner has not commenced any other state court

proceedings directly or collaterally challenging his conviction.

B.   Proceedings In This Court

Brown's petition, which is dated October 19, 2007, was filed on October

25, 2007. Dkt. No. 1. In his petition, Brown raises eight grounds for seeking

habeas relief, including all of those raised before and rejected by the Third

Department, asserting that 1) the trial court's failure to suppress his

---

[4]    Petitioner was represented by counsel in connection with both his direct
appeal and his petition for leave to appeal to the Court of Appeals.

statements and physical evidence violated his constitutional rights since both were products of an unlawful traffic stop; 2) the trial court erred in refusing to allow the petitioner to review the victim's records and cross-examine her regarding medications and counseling; 3) the trial court improperly deprived petitioner of his right of confrontation by refusing to permit his counsel to introduce a letter written by the victim into evidence for the purpose of undermining the reliability of her trial testimony; 4) the trial court impermissibly precluded the petitioner from attempting to challenge the credibility of the victim's trial tesitmony through testimony from her boyfriend; 5) the prosecution engaged in misconduct by asking the petitioner to explain the testimony of prosecution witnesses; 6) the jury's verdict was against the weight of the evidence; 7) petitioner received ineffective assistance of counsel due to defense counsel's failure to object to the prosecution's cross-examination of Brown asking him to explain the testimony of prosecution witnesses; and 8) the sentence imposed was unlawful and excessive. *Id.* Appropriately named as the respondent in Brown's petition is James Conway, the Superintendent of the Attica Correctional Facility, where petitioner is currently being held by the New York State Department of Correctional Services.

8

On March 17, 2008 the respondent, represented by the New York State Attorney General, submitted an answer to the petition as well as a memorandum in opposition to Brown's request for habeas relief.  Dkt. Nos. 7, 8.  Accompanying those documents were state court records that were forwarded to this court and have been filed under seal in view of the nature of the underlying prosecution.  Petitioner has since responded by filing a reply memorandum, or a "traverse", on April 22, 2008.  Dkt. No. 10.

Brown's petition, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Statute of Limitations

In his answer to the petition respondent asserts that Brown's petition was not timely filed and asks that it be dismissed on this procedural ground. *See* Answer (Dkt. No. 7) ¶ 3.  In his supporting memorandum respondent argues that the petition was not filed within the governing one-year limitation period provided under federal statute and that the record discloses no basis to conclude either that petitioner is eligible for equitable tolling or that he has

advanced a credible claim of actual innocence that could potentially override the untimeliness of the petition.

In 1996 Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), bringing about sweeping reform of the prison inmate litigation landscape; among the measures introduced by the AEDPA were significant new restrictions on the power of the federal courts to grant habeas relief to state court prisoners under 28 U.S.C. § 2254.  One such restriction resulted from creation of a one-year limitation period for filing such habeas petitions.  28 U.S.C. § 2244(d)(1); *Cook v. New York State Div. of Parole*, 321 F.3d 274, 279-80 (2d Cir. 2003).  The AEDPA statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review."  *Duncan v. Walker*, 533 U.S. 167, 179, 121 S.Ct. 2120, 2128 (2001).

The provision establishing the one-year limitation offers specific guidance regarding measurement of the prescribed period, providing that the governing statute of limitations

> shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the

10

time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In this instance petitioner's conviction became final ninety days after the March 15, 2006 denial of his application for leave to appeal, or on June 13, 2006.  *Id.; see Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir.), *cert. denied,* 546 U.S. 816, 126 S.Ct. 79 (2005).  Since petitioner did not file any intervening state court proceedings collaterally challenging his conviction, he is not entitled to any intermediate tolling, which would otherwise apply during the pendency of such a proceeding.  *See Adeline v. Stinson*, 206 F.3d 249 (2d Cir. 2000) (per curiam).  Petitioner's time for filing a petition under section 2254 therefore expired on June 13, 2007.

11

While petitioner filed this proceeding on October 25, 2007, his petition is dated October 19, 2007.  Accordingly, even affording him the benefit of the prison mailbox rule, *see Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir.), *cert. denied*, 534 U.S. 886, 122 S.Ct. 197 (2001) (extending "prison mailbox rule" petitions seeking writ of habeas corpus pursuant to 28 U.S.C. § 2254); *see also Walker v. Jastremski ,* 430 F.3d 560, 562 (2d Cir. 2005), *cert. denied*, 547 U.S. 1101, 126 S.Ct. 1887 (2006), Brown's petition is untimely by in excess of four months and is therefore subject to dismissal absent his eligibility for one of the limited exceptions or tolling provisions applicable to the one-year statute of limitations.

B.    Equitable Tolling

One of the recognized exceptions warranting the court's consideration of the merits of an otherwise untimely petition is equitable tolling.  "In 'rare and exceptional circumstances' a petitioner may invoke the court's power to equitably toll the limitations period" imposed under the AEDPA.  *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir. 2004), *cert. denied*, 546 U.S. 961, 126 S.Ct. 489 (2005) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)); *Corrigan v. Barbery*, 271 F. Supp.2d 325, 330 (W.D.N.Y. 2005) (citing *Smith*). Under this narrow exception, the AEDPA statute of limitations may properly

be equitably tolled where a petitioner has diligently pursued his or her rights, but has been prevented by "extraordinary circumstances" from filing a petition.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814 (2005) (citation omitted); *see also Menefee*, 391 F.3d at 154.  "To merit application of equitable tolling, the petitioner must demonstrate that he [or she] acted with reasonable diligence during the period he [or she] wishes to have tolled, but that despite his [or her] efforts, extraordinary circumstances beyond his [or her] control prevented successful filing during that time." *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001) (internal quotation and citation omitted), *cert. denied*, 535 U.S. 1017, 122 S.Ct. 1606 (2002); *see also Warren*, 219 F.3d at 113 (citing *Smith*); *West v. Hamill*, No. 04-CV-2393, 2005 WL 1861735, at *1 (E.D.N.Y. Aug. 1, 2005) (citing *Smith*).[5]

Despite the fact that respondent prominently addressed the timeliness issue in his answering papers, petitioner's reply memorandum does not offer any explanation for the lateness of his petition or advance any reason why it should not be dismissed as time-barred, but instead focuses on the merits of his habeas claims. The only excuse petitioner offers for his late filing is the claim in his petition that he did not become aware of the denial of his

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

13

application for leave to appeal until June 27, 2007.  *See* Petition (Dkt. No. 1)

¶ 18.  In his petition Brown intimates that he was not even aware that a

petition for leave to appeal was filed on his behalf and only learned of the

denial of leave in response to his filing of an application for permission to file

a late petition for leave to appeal.  *Id.*

The state court records provided to this court reflect that on or about

January 9, 2006, petitioner's counsel forwarded a copy of the application for

leave to appeal to the New York Court of Appeals to the petitioner at the

Sullivan Correctional Facility, where petitioner was apparently confined at the

time. *See* State Court Records Exh. E.  It is unlikely that petitioner's counsel

would not have similarly forwarded to Brown the order issued on March 15,

2006 denying that application.  In any event, petitioner's claim that he was

unaware of the denial of leave to appeal until a year and a half after the

Appellate Division's decision affirming his conviction, with no indication of any

attempt by petitioner to contact his attorney to inquire regarding the status of

his appeal efforts, does not present the type of circumstance reflecting a

diligent pursuit of rights foiled by extraordinary circumstances which would

merit the invocation of equitable tolling.  *Smaldone*, 273 F.3d at 138-39 (citing

cases and noting that attorney error and/or negligence is not a valid basis for

14

equitable tolling); *see also, West*, 2005 WL 1861735, at *2.  Accordingly, I

find no basis to recommend that the court resort to equitable tolling in order

to entertain the merits of Brown's untimely petition.

      C.    <u>Actual Innocence</u>

      Another potentially available exception to the one-year statute of

limitations involves claims of actual innocence.  The Second Circuit has not

yet staked out a formal position regarding whether the United States

Constitution requires that an "actual innocence" exception be engrafted into

the AEDPA's statute of limitations.  *See Whitley v. Senkowski,* 317 F.3d 223,

225 (2d Cir. 2003); *Warren v. Artus*, Nos. 9:05 CV 1032, 2007 WL 1017112,

at *9 (N.D.N.Y. Mar. 30, 2007) (Kahn, D.J. & Peebles, M.J.).  That court has

nonetheless directed that district courts consider a claim of actual innocence

before dismissing a habeas petition as untimely.  *Id.; see also, Menefee,* 391

F.3d at 161.

      A showing of actual innocence requires more than merely arguing that

the jury's finding of guilt is against the weight of the evidence; to establish

actual innocence, a petitioner must present "new reliable evidence that was

not presented at trial and show that it is more likely than not that no

reasonable juror would have found [him or her] guilty beyond a reasonable

doubt." *Whitley,* 317 F.3d at 2257; *see also Medina v. McGinnis*, No. 04 Civ 26, 2004 WL2088578, *27 (S.D.N.Y. Sept. 20, 2004).  Here, petitioner has failed to come forward with any new evidence that would provide support for a claim of actual innocence.  Moreover, the evidence of guilt adduced at trial was plentiful.

Weighing the evidence, and acknowledging inconsistencies in the various versions of the relevant events provided, including those given at different points by the victim, the Third Department nonetheless found ample evidence to support the jury's verdict.  *People v. Brown,* 24 A.D.2d at 886-87, 806 N.Y.S.2d 262.  Among that evidence was the victim's statement regarding the incident, corroborated by observations regarding her physical condition, including bruises on her face, neck, and wrist, a broken nose, burn marks on her face, and stab wounds around her eyes.  The verdict was also supported by considerable forensic evidence, including skin tissue on the cigarette lighter and a knife with blood, both found in petitioner's car and matching the victim's DNA.  In addition, semen recovered from the victim's vagina and anus matched defendant's DNA, and the victim's blood was located in the interior and exterior of petitioner's vehicle.  Given these circumstances, I am unable to conclude that petitioner has established a

16

credible claim of actual innocence sufficient to excuse the untimeliness of his petition.

         D.     <u>Certificate of Appealability</u>

In order for a petitioner to appeal a final order denying habeas relief by a state prisoner, a district or circuit judge must issue a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b) ("unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)", an appeal may not be taken from the denial of a habeas petitioner under section 2254).   A COA may only issue "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

In a case such as this, where dismissal of a petition is based on a procedural ground, a petitioner is eligible for a COA upon a showing "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595,1604 (2000); *see also, Bethea v. Girdich*, 293 F.3d 577, 577-78 (2d Cir. 2002).  As can be seen, this standard is comprised of two components, one of which is directed

to the constitutional claims set forth in the petition, while the other focuses upon the basis for the court's procedural holding. *Id.*

It seems abundantly clear in this case that Brown's petition was untimely and that he has failed to demonstrate that he should be excused from the applicable statute of limitations on the basis of equitable tolling or actual innocence. Accordingly, I recommend against the issuance of a COA in this case.

IV.    SUMMARY AND RECOMMENDATION

The petition in this matter, in which Brown raises eight grounds for seeking habeas relief, was filed more than sixteen months after his conviction became final for AEDPA purposes, through expiration of the time for seeking *certiorari* review by the United States Supreme Court, and thus four months beyond the expiration of the governing one-year statute of limitations. Since petitioner has offered no plausible basis for concluding either that equitable tolling should be invoked in order to salvage his otherwise untimely petition or that he is actually innocent of the crimes of conviction, it is hereby respectfully

RECOMMENDED that the petition in this matter be DISMISSED as untimely; and it is further

RECOMMENDED that a certificate of appealability not be issued with respect to the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), and 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     April 28, 2010
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

19